UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| HANNAH MIKAYLAH MADDEN; and ELIJAH NEHEMIAH MADDEN,<br><br>Plaintiffs,<br><br>v.<br><br>JUDGE CHELSEA KOCH; JUDGE GRIFFIN; JUDGE PETERSEN; JUDGE POWELL; JEREMY SHIMADA; JULIA THOMAS; WAYNE VANDEGRAAFF; DEPUTY KADEN COOK; DEPUTY DEAN OLSEN; UTAH COUNTY; UTAH COUNTY SHERIFF'S OFFICE; SALT LAKE COUNTY; and DEPUTY SAINSBERRY,<br><br>Defendants. | **REPORT AND RECOMMENDATION TO:**<br><br>**GRANT JUDICIAL DEFENDANTS' AND JEREMY SHIMADA'S MOTIONS TO DISMISS (DOC. NOS. 38 & 39);**<br><br>**GRANT IN PART AND DENY IN PART UTAH COUNTY DEFENDANTS' MOTION TO DISMISS (DOC. NO. 46);**<br><br>**DENY PLAINTIFFS' MOTION FOR IMMEDIATE RELEASE (DOC. NO. 37); AND**<br><br>**DENY WITHOUT PREJUDICE MOTION FOR LEAVE TO AMEND (DOC. NO. 54)**<br><br>Case No. 2:26-cv-00026<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Proceeding without an attorney, Elijah Madden and his daughter, Hannah Madden, brought this civil rights action against several defendants in connection with ongoing criminal proceedings against Mr. Madden.[1] Specifically, the Maddens name as

[1] (Compl., Doc. No. 1.) Because Mr. Madden did not sign the complaint, the court ordered him to do so. (Order to File Signed Compl., Doc. No. 44.) In response, Mr. Madden filed a signed declaration. (Decl. of Elijah-Nehemiah Madden, Doc. No. 45.) The court construes this declaration as remedying the signature issue, notwithstanding the court's subsequent order. (Second Order to File Signed Compl., Doc. No. 47.)

defendants: judges Chelsea Koch, Kraig Powell, Roger Griffin, and Sean Petersen (the Judicial Defendants); public defender Jeremy Shimada; prosecutors Julia Thomas and Wayne VanDeGraaff, deputies Kaden Cook, Caleb Olson, and Sainsberry, Utah County, and the Utah County Sheriff's Office (the Utah County Defendants); and Salt Lake County.[2] All the defendants other than Salt Lake County (which has not been served) have moved to dismiss the complaint on jurisdictional grounds and for failure to state plausible claims.[3] Mr. Shimada also seeks dismissal based on insufficient service of process.[4] The Maddens oppose the motions.[5] Separately, they move for leave to amend, reiterating the same claims and allegations and providing little additional detail.[6] The Maddens also seek Mr. Madden's immediate release from custody (among other relief)—in a filing construed as a motion for preliminary injunction.[7]

---

[2] (Compl., Doc. No. 1.) The complaint misidentifies Deputy Olson as "Dean Olsen" and omits first names for several of the named judges and Deputy Sainsberry. This is corrected, where possible, based on the parties' briefing.

[3] (Judicial Defs.' Mot. to Dismiss (Judicial Defs.' MTD), Doc. No. 38; Def. Jeremy Shimada's Mot. to Dismiss Compl. (Shimada MTD), Doc. No. 39; Utah County Defs.' Mot. to Dismiss (Utah County Defs.' MTD), Doc. No. 46.)

[4] (Shimada MTD, Doc. No. 39.)

[5] (Pls.' Opp'n to Defs.' Mot. to Dismiss (Opp'n to Judicial Defs.' MTD & Utah County Defs.' MTD), Doc. No. 58; Pls.' Mem. in Opp'n to Mot. to Dismiss (Opp'n to Shimada MTD), Doc. No. 41.) Because the Maddens' filings lack page numbers, references are to the CM/ECF pagination.

[6] (*See* Mot. for Leave to Amend, Doc. No. 54.)

[7] (Mot. for Rejection of Extension of Time, Request for Acknowledgment of Conflict of Interest, and Mot. for Immediate Release on Own Recognizance (Mot. for Immediate Release), Doc. No. 37.)

The undersigned[8] recommends the district judge grant the Judicial Defendants' and Mr. Shimada's motions to dismiss, and grant in part and deny in part the Utah County Defendants' motion to dismiss. The Maddens' excessive force claim against Deputy Sainsberry should be stayed under the *Younger* abstention doctrine, where it is intertwined with pending state criminal charges against Mr. Madden. But all other claims should be dismissed. Specifically, under the *Younger* doctrine, the Maddens' claims for injunctive and declaratory relief relating to the criminal proceedings should be dismissed without prejudice. Where the judges are entitled to absolute judicial immunity, the Maddens' damages claims against the judges must be dismissed with prejudice. The Maddens' claims against Mr. Shimada should be dismissed without prejudice for insufficient service, where re-service would be futile because the complaint fails to state a claim against him. And where the remaining claims do not state a claim or otherwise comply with Rule 8 of the Federal Rules of Civil Procedure, they should be dismissed without prejudice.

The undersigned also recommends the district judge deny the Maddens' motion for a preliminary injunction, where the claims underlying the request for injunctive relief must be dismissed under *Younger*. Finally, the Maddens' motion to amend should be denied where their proposed amended complaint does not remedy any deficiencies. But the Maddens should be permitted to file a new motion to amend addressing the pleading deficiencies identified in this report.

[8] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (*See* Doc. No. 51.)

## BACKGROUND[9]

Although the complaint is difficult to follow, it is apparent the Maddens' claims relate to pending state criminal proceedings against Mr. Madden.[10] In November 2023, Mr. Madden was charged with parental kidnapping, endangerment of a child or vulnerable adult, and the use of a firearm by a restricted person.[11] Originally, the case was assigned to Judge Griffin, then, to Judge Petersen in Utah's Fourth Judicial District.[12] In October 2024, after Mr. Madden failed to appear for a hearing, Judge Petersen issued a warrant for his arrest.[13]

Two months later, Mr. Madden "served" the state court and the Utah County Sheriff's Office with an "Emergency Petition for Writ of Habeas Corpus, Notice of Non-Compliance with the Federal Rules of Civil Procedure, and a self-executing adhesion

---

[9] The following facts are from the complaint, the exhibits attached to the complaint, and state court records from the criminal proceedings referenced in the complaint. Relying on these materials does not require converting the motions to dismiss into motions for summary judgment. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64 (10th Cir. 2025) (explaining "documents attached to the complaint as exhibits" and "matters subject to judicial notice" are exceptions to the rule that courts must only review the complaint on a motion to dismiss); *Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished) (explaining that facts subject to judicial notice include "another court's publicly filed records concerning matters that bear directly upon the disposition of the case at hand").

[10] (Compl., Doc. No. 1 at 4 (referencing "Case No. 231404444 and AF 231101509").)

[11] *See Utah v. Madden*, Nos. 231101509 & 231404444 (Utah 4th Dist. Ct., filed Nov. 20, 2023).

[12] *See id.*

[13] *Utah v. Madden*, No. 231404444 (Utah 4th Dist. Ct. Oct. 1, 2024).

contract, Under God."[14] He explained that he did not "consent to any further proceedings" and "refuse[d] to subscribe to any public officials or legal authorities" acting without lawful authority.[15] In Mr. Madden's view, "American people are in[ ]f[a]ct sovereign" and the court lacked jurisdiction over him as "a private living man with blood flowing through his body."[16]

On January 13, 2025, Mr. Madden was arrested. The Maddens were "lawfully traveling" in their car when "Utah County Sheriff's Office deputies tracked their location through geo-technology and initiated a coordinated seizure."[17] "Deputy Sainsberry executed a deliberate PIT [(pursuit intervention technique)] maneuver," forcing the Maddens' car "off a cliff and causing multiple violent rolls, resulting in severe injuries to [Mr.] Madden and extreme trauma to [Ms.] Madden."[18] "After the crash, deputies approached with firearms drawn and held [the Maddens] at gunpoint."[19] The Maddens "were forced to climb a steep embankment while injured."[20] And Ms. Madden "was

---

[14] (Compl., Doc. No. 1 at 4; Ex. A to Compl., Dec. 2024 Notice filed in Case Nos. 231101509 & 231404444, Doc. No. 1-9); *Utah v. Madden*, No. 231404444 (Utah 4th Dist. Ct. Dec. 20, 2024).

[15] (Ex. A to Compl., Dec. 2024 Notice filed in Case Nos. 231101509 & 231404444, Doc. No. 1-9 at 3.)

[16] (*Id.* at 4, 12.)

[17] (Compl., Doc. No. 1 at 3.)

[18] (*Id.*)

[19] (*Id.* at 3–4.)

[20] (*Id.* at 4.)

never transported to a hospital."[21] Instead, she was handcuffed in a police car "for over two hours and forced to conduct a self-evaluation."[22]

For Mr. Madden, "[p]aramedics had to argue with deputies to allow ambulance transport."[23] He "received only minimal care for approximately twelve hours" and "was issued a back brace for broken ribs, fractured collarbone, and spinal injuries."[24] Mr. Madden was then taken into custody and transported to "Utah county jail."[25] When he arrived, "his back brace was confiscated and discarded, he was forced to sleep on a top bunk, and his medical and dietary needs were ignored, aggravating his injuries."[26]

New charges were filed against Mr. Madden based on the events surrounding the arrest, including parental kidnapping, failure to stop or respond at the command of police, and reckless endangerment.[27] Both the new case and the prior case were transferred to Utah's Third Judicial District and assigned to Judge Koch.[28] Mr. Madden was then transferred to Salt Lake County Jail in early February 2025.[29] The

---

21 (*Id.*)

22 (*Id.*)

23 (*Id.*)

24 (*Id.*)

25 (*Id.*)

26 (*Id.*)

27 *See Utah v. Madden*, No 251400238 (Utah 4th Dist. Ct. Jan. 16, 2025).

28 *See Utah v. Madden*, Nos. 251901301 & 251901302 (Utah 3d Dist. Ct. Jan. 29, 2025).

29 (Compl., Doc. No. 1 at 4.) According to the Maddens' later filings, Mr. Madden was released from custody in March 2026. (*See* Doc. No. 55 at 2.)

"Defendants" have allegedly confined Mr. Madden without lawful jurisdiction, *Miranda* warnings, or "a verified complaint."[30] And they have "imposed forced representation through Jeremy Shimada."[31] When Mr. Madden "refused to consent to representation . . . and demanded lawful jurisdiction, Defendants attempted to declare him incompetent and confined him to a mental hospital to coerce compliance."[32] He "was later declared competent."[33] During the proceedings, Judge Koch "has repeatedly refused to state her oath of office on the record" and "has attempted to proceed under a secret jurisdiction not disclosed on the record."[34] And Ms. Thomas has knowingly participated in the proceedings.[35] Both cases remain ongoing, with a scheduling conference set for September 21, 2026.[36]

The Maddens filed this federal action in January 2026.[37] The complaint includes a numbered list of "major wrongful acts committed," which is construed as the Maddens' list of claims—summarized as follows:[38]

---

[30] (Compl., Doc. No. 1 at 4.) The Maddens often do not link specific defendants to their allegations, making it unclear which defendant's actions are at issue.

[31] (*Id.*)

[32] (*Id.*)

[33] (*Id.*)

[34] (*Id.*)

[35] (*Id.* at 8.)

[36] *See* Dockets, *Utah v. Madden*, Nos. 251901301 & 251901302 (Utah 3d Dist. Ct.).

[37] (Compl., Doc. No. 1.)

[38] (*Id.* at 2–3.)

1) "Attempted extrajudicial killing by execution of a deliberate PIT maneuver causing the crash" of the Maddens' vehicle.
2) "Crash over cliff," seizure, arrest, and detention of Mr. Madden without "lawful jurisdiction," "a verified complaint," or "a lawfully served warrant."
3) Failure to conduct a proper investigation and failure to establish probable cause before or after using deadly force.
4) Failure to read Mr. Madden his *Miranda* rights.
5) Denial of "prompt and adequate medical care following violent injuries," including forcing Ms. Madden to conduct a self-evaluation and trying to transport Mr. Madden, who was severely injured, to jail instead of a hospital.
6) "Prolonged detention" of Ms. Madden in a police cruiser for hours without providing necessary medical care.
7) "Use of excessive and deadly force by Utah County Sheriff's Office deputies" by keeping firearms drawn during the arrest.
8) "Obstruction of legal access and remedy by refusing to accept lawful court filings submitted under valid Power of Attorney authority."
9) "Forced legal representation imposed by Jeremy Shimada" without Mr. Madden's consent, "followed by attempts to declare [Mr. Madden] incompetent solely for refusing to consent to representation."
10) "Improper venue transfer of the underlying case while retaining the same prosecutor."
11) "Fraud in contract and adhesion, including continued prosecution and detention absent consent, jurisdiction, or an injured party."

12) "False statements to the public and media alleging evasion, kidnapping, and threats, knowingly inconsistent with the truth and contradicted by the evidence."

13) "Seizure, destruction, and withholding of Plaintiffs' private and religious property, including removal of a camera monitoring system to conceal evidence of attempted murder."

14) "Deprivation of rights under color of law and conspiracy to do so, in violation of 18 U.S.C. §§ 241 and 242."

The Maddens reference the Fourth and Fourteenth Amendments and/or "due process" in claims 2, 3, 5, 10, and 13 (claims relating to the arrest, use of deadly force, denial of medical care, case transfer, and destruction of property). They reference the Fifth Amendment in claims 3 and 4 (claims relating to use of deadly force and *Miranda* violation). And they reference the Sixth Amendment and 18 U.S.C. § 242 in claim 9 (relating to Mr. Shimada's representation). Although the Maddens do not expressly cite 42 U.S.C. § 1983, the court construes the complaint as asserting claims for constitutional violations under this statute. As relief, the Maddens seek more than $700 million in damages, declaratory and injunctive relief (including a prohibition on further proceedings in the criminal cases), and unspecified "sanctions."[39]

## LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows dismissal of a case for "lack of subject-matter jurisdiction."[40] A motion to dismiss under Rule 12(b)(1) may

---

[39] (Compl., Doc. No. 1 at 6–9.)

[40] Fed. R. Civ. P. 12(b)(1).

take one of two forms—a facial attack or a factual attack.[41] "A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[42] "A factual attack, on the other hand, goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[43] The defendants bring a facial attack because they base their jurisdictional arguments solely on the allegations in the complaint, as well as state court records subject to judicial notice.[44] When a dismissal motion presents a facial attack, the court applies the standards applicable to a Rule 12(b)(6) motion and accepts the allegations in the complaint as true.[45]

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[46] To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[47] Courts accept well-pleaded

---

[41] *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012).

[42] *Id.* (internal quotation marks omitted).

[43] *Id.* (internal quotation marks omitted).

[44] *See Thurman v. Steidley*, No. 16-cv-554, 2017 U.S. Dist. LEXIS 85725, at *11 (N.D. Okla. June 5, 2017) (unpublished) (concluding a Rule 12(b)(1) motion to dismiss relying on state court records subject to judicial notice presented a facial attack); *Mackley v. Davis*, No. 1:13-cv-00129, 2014 U.S. Dist. LEXIS 66115, at *4 (D. Utah Apr. 25, 2014) (unpublished) (same); *see also St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[45] *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

[46] Fed. R. Civ. P. 12(b)(6).

[47] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

factual allegations as true and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[48] But a court need not accept a plaintiff's conclusory allegations as true.[49] "[A] plaintiff must offer specific factual allegations to support each claim,"[50] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[51] Records of court proceedings which bear directly on a plaintiff's claims are subject to judicial notice and may be considered without converting a Rule 12(b)(6) motion to a motion for summary judgment.[52]

Because the Maddens proceed pro se (without an attorney), their filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[53] Still, pro se plaintiffs must follow the same procedural rules as other litigants.[54] For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[55] While courts make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of

---

[48] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[49] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[50] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[52] *See Brown*, 124 F.4th at 1263–64; *Hodgson*, 675 F. App'x at 840–41; *Ahidley*, 486 F.3d at 1192 n.5.

[53] *Hall*, 935 F.2d at 1110.

[54] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[55] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[56] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[57]

## DISCUSSION

### I. Motions to Dismiss

The defendants seek dismissal on various grounds. The Judicial Defendants contend they have judicial immunity and the Maddens' claims are barred by *Younger v. Harris*.[58] They also argue the claims fail on the merits, and they are frivolous where they are based on fringe sovereign-citizen theories.[59] Mr. Shimada argues the Maddens did not properly serve him with process and they fail to state a cognizable claim against him.[60] The Utah County Defendants contend the Maddens' claims are barred by the *Heck*[61] doctrine and they fail to state municipal liability claims against Utah County and the Utah County Sheriff's Office.[62] The Utah County Defendants also argue the complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure because it contains no factual allegations relating to Mr. VanDeGraaff, Deputy Cook, or

---

[56] *Hall*, 935 F.2d at 1110.

[57] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[58] 401 U.S. 37 (1971).

[59] (Judicial Defs.' MTD, Doc. No. 38.)

[60] (Shimada MTD, Doc. No. 39.)

[61] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[62] (Utah County Defs.' MTD, Doc. No. 46.)

Deputy Olson, and contains only conclusory allegations against Ms. Thomas.[63] And they argue the Maddens fail to state a claim against Deputy Sainsberry, who contends he has qualified immunity for performing the PIT maneuver.[64]

In response, the Maddens contend they have stated claims against these defendants.[65] They generally argue the state court lacked jurisdiction, and they contend the constitutional violations they allege under § 1983 are plausible.[66] The Maddens also claim Mr. Shimada acted in coordination with state officials, and the PIT maneuver was an "excessive and unreasonable" use of force.[67] Apart from this, the Maddens fail to address the issues of *Younger* abstention, judicial immunity, municipal liability, or Deputy Sainsberry's qualified immunity defense.[68]

As explained below, the Maddens' claims for declaratory and injunctive relief relating to the criminal proceedings must be dismissed under the *Younger* abstention doctrine. And because the Maddens' excessive force claim against Deputy Sainsberry based on the PIT maneuver is intertwined with pending criminal charges, this claim

---

[63] (*Id.*)

[64] (*Id.*)

[65] (Opp'n to Judicial Defs.' MTD & Utah County Defs.' MTD, Doc. No. 58 at 1–2; Opp'n to Shimada MTD, Doc. No. 41 at 2.) The Maddens' opposition to Mr. Shimada's motion appears to respond to and address arguments by the other defendants, as well as arguments by Mr. Shimada. (*See, e.g.*, Opp'n to Shimada MTD, Doc. No. 41 at 4 (arguing they have stated a Fourth Amendment violation by law enforcement officers based on the PIT maneuver).)

[66] (Opp'n to Shimada MTD 2–3, 5, Doc. No. 41.)

[67] (*Id.* at 3–4.)

[68] (*Id.*)

must be stayed under the *Younger* doctrine until those charges are resolved. The remaining claims should be dismissed because: the Judicial Defendants are entitled to absolute judicial immunity; Mr. Shimada was not properly served and allowing re-service would be futile; the Maddens fail to state a claim for municipal liability against Utah County and the sheriff's office; and the Maddens' complaint fails to comply with Rule 8 as to the remaining claims and defendants.

A. *Younger* Abstention

Only the Judicial Defendants seek dismissal based on *Younger* abstention. Mr. Shimada does not raise this issue. And the Utah County Defendants rely on the *Heck* doctrine, which bars civil rights claims that would invalidate a criminal conviction or sentence.[69] But the *Heck* doctrine does not apply where, as here, the plaintiff has not yet been convicted in the underlying criminal case.[70] Because *Younger* abstention may be raised sua sponte, the undersigned considers this doctrine's applicability to the Maddens' claims against all defendants.[71]

*1. Applicable Law*

"*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those

---

[69] (*See* Utah County Defs.' MTD 6–7, Doc. No. 46); *Heck*, 512 U.S. at 486–87.

[70] *See Wallace v. Kato*, 549 U.S. 384, 393 (2007); *Garza v. Burnett*, 672 F.3d 1217, 1218 (10th Cir. 2012).

[71] *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) ("[A]bstention may be raised by the court *sua sponte*.").

proceedings—when such relief could adequately be sought before the state court."[72] *Younger* abstention applies where, like here, the state proceeding is a criminal prosecution.[73] And the state proceeding must be: (1) ongoing, (2) involve an important state interest, and (3) provide an adequate opportunity to raise federal claims.[74] Absent extraordinary circumstances, federal courts must abstain from hearing a case where these conditions are met.[75] Claims for injunctive or declaratory relief to which *Younger* applies must be dismissed without prejudice.[76]

*Younger* abstention "extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding."[77] Federal damages claims may not be dismissed under *Younger* but, instead, should be stayed until the state proceedings are final.[78] But where damages claims are brought against defendants who enjoy absolute immunity or cannot be liable

---

[72] *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citation omitted).

[73] *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (holding that *Younger* abstention only applies to three "exceptional" categories of state proceedings, one of which is state criminal prosecutions).

[74] *See Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024).

[75] *See Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245, 1256 (10th Cir. 2022) ("*Younger* abstention is non-discretionary, and the district court must abstain once the conditions are met, absent extraordinary circumstances." (internal quotation marks omitted)).

[76] *See Chapman ex rel. KKC v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010) (unpublished).

[77] *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

[78] *Id.*

under 42 U.S.C. § 1983, or the claims are otherwise facially deficient or frivolous, the Tenth Circuit has endorsed dismissal on these other grounds in lieu of a stay.[79]

2. *The Maddens' claims for declaratory and injunctive relief relating to the criminal proceedings must be dismissed under the* Younger *abstention doctrine.*

Applying these principles, the court must abstain from exercising jurisdiction over the Maddens' claims for injunctive and declaratory relief relating to the criminal proceedings. In claims 3, 8, 9, 10, and 11, the Maddens allege constitutional violations relating to the state criminal proceedings.[80] And in their request for injunctive relief, the Maddens ask this court to "[p]rohibit further proceedings" in the criminal cases, "cease all unlawful detention," and "[p]revent further obstruction of lawful filings and access to remedy."[81] They also seek declarations that: the defendants acted without "lawful jurisdiction" or probable cause, Mr. Madden's continued detention is unlawful, Mr.

[79] *See, e.g.*, *Fetzer v. Raemisch*, 803 F. App'x 181, 183–85 (10th Cir. 2020) (unpublished) (affirming decision to dismiss damages claim as frivolous in lieu of applying *Younger* abstention); *Carbajal v. Hollman*, 485 F. App'x 332, 332–33 (10th Cir. 2012) (unpublished) (concluding damages claims dismissed under *Younger* were more appropriately dismissed on "alternate grounds that present a complete bar to relief," namely, prosecutorial immunity and "lack of a legal basis" to hold a board of county commissioners liable); *Esquibel v. Williamson*, 421 F. App'x 813, 816 (10th Cir. 2010) (unpublished) (noting the district court erred in dismissing rather than staying damages claims based on *Younger*, but affirming dismissal on alternate grounds of prosecutorial immunity and failure to state a claim for personal liability against a public defender); *Myers v. Garff*, 876 F.2d 79, 80–81 (10th Cir. 1989) (affirming dismissal of equitable claims based on *Younger* and dismissal of damages claims against a judge based on judicial immunity).

[80] Specifically, they allege constitutional violations relating to: failure to conduct a proper investigation (part of claim 3); refusal to accept court filings (claim 8); forced representation by Mr. Shimada and attempts to declare Mr. Madden incompetent (claim 9); improper transfer of the criminal case (claim 10); and continued prosecution and detention (claim 11). (*See* Compl., Doc. No. 1 at 2–3.)

[81] (*Id.* at 8–9.)

Shimada's "forced representation" violates due process, and Judge Koch's refusal to state her oath of office violates due process.[82] All this requested relief would directly interfere with the ongoing state proceedings.

With respect to these claims, all three conditions for *Younger* abstention are met, and the circumstances do not otherwise permit the exercise of federal jurisdiction. The criminal proceedings—which were ongoing when the Maddens filed their complaint—remain ongoing. These proceedings directly implicate the State's important interest in addressing crime.[83] And there is no indication the state courts are inadequate forums in which to litigate claims regarding Mr. Madden's detention or constitutional violations in the criminal proceedings.[84] The Maddens also fail to allege any extraordinary circumstances justifying the exercise of federal jurisdiction.[85]

---

[82] (*Id.* at 6.)

[83] *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (explaining that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief" (citing *Younger*, 401 U.S. at 44–45)); *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) ("The state of Utah has an important interest in its criminal proceedings.").

[84] *See Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) ("Unless state law clearly bars the interposition of the federal statutory and constitutional claims, a plaintiff typically has an adequate opportunity to raise federal claims in state court." (internal quotation marks omitted)); *Chapman v. Barcus*, 372 F. App'x 899, 902 (10th Cir. 2010) (unpublished) (explaining that, for *Younger*'s second condition, "it is a plaintiff's burden to establish that state law prevents him from presenting his federal claims in state proceedings").

[85] *See Younger*, 401 U.S. at 54 (creating exception on "showing of bad faith, harassment, or any other unusual circumstances that would call for equitable relief"); *see also Moore v. Sims*, 442 U.S. 415, 424 (1979) (explaining that *Younger* allows "intervention" where a federal court "properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith," or is based on a "flagrantly and patently" unconstitutional statute); *Amanatullah*, 187 F.3d at 1165 (identifying

Accordingly, the court must abstain from exercising jurisdiction over the Maddens' claims for injunctive and declaratory relief relating to constitutional violations in the criminal proceedings. Claims 3, 8, 9, 10, and 11 must be dismissed without prejudice under *Younger* as to the Maddens' requests for declaratory and injunctive relief.

*3. The damages claims relating to the criminal proceedings should be dismissed instead of stayed.*

The Maddens also seek damages on their claims for constitutional violations in the criminal proceedings.[86] But where the Maddens bring these claims against defendants who have absolute immunity or cannot be liable under § 1983, or the claims are legally frivolous or deficient under Rule 8, the claims should be dismissed instead of stayed. As explained below, the Judicial Defendants are entitled to absolute immunity. Mr. Shimada was not properly served and is not a state actor subject to suit under 42 U.S.C. § 1983. The Maddens' claims against the named prosecutors do not comply with Rule 8, where the Maddens allege no specific conduct by them.[87] And the claims the Maddens assert under criminal statutes (Claims 9 and 14) are legally frivolous. Accordingly, the damages claims relating to the criminal proceedings should be dismissed on these alternate grounds rather than stayed under *Younger*.

---

exceptions to *Younger* abstention); *Phelps v. Hamilton*, 59 F.3d 1058, 1064–68 (10th Cir. 1995) (explaining exceptions to *Younger* abstention).

[86] (*See* Compl., Doc. No. 1 at 6–7.)

[87] The prosecutors may also be entitled to prosecutorial immunity, but the Utah County Defendants do not raise this issue in their motion.

4. *Where the excessive force claim against Deputy Sainsberry is intertwined with pending criminal charges, this claim must be stayed under* Younger*.*

Claims 1, 2, and 7 are liberally construed as asserting a Fourth Amendment excessive force claim against Deputy Sainsberry based on his execution of the PIT maneuver during the apprehension of Mr. Madden.[88] The Maddens allege Deputy Sainsberry forced their car off a cliff, causing "multiple violent rolls" resulting in "severe injuries" to Mr. Madden and "extreme trauma" to Ms. Madden.[89]

Assessing the reasonableness of the force used, for purposes of a Fourth Amendment excessive force claim, requires considering "the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others, and (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight.'"[90] In this case, the second and third elements are intertwined with the pending criminal charges against Mr. Madden arising from the same incident: reckless endangerment and failure to stop at the command of police. Because the question of whether Deputy Sainsberry used excessive force hinges in part on whether Mr. Madden posed an

---

[88] (*See* Compl., Doc. No. 1 at 2.) In claim 1, the Maddens allege "[a]ttempted extrajudicial killing by execution of a deliberate PIT maneuver" causing the Maddens to crash their car. (*Id.*) In claim 2, the Maddens assert the "[c]rash over cliff" (among other actions) violated their rights under the Fourth and Fourteenth Amendments. (*Id.*) In claim 7, the Maddens claim deputies used "excessive and deadly force" (although here they specifically reference "keeping firearms drawn," not the PIT maneuver). (*Id.*) Elsewhere in the complaint, the Maddens allege Deputy Sainsberry executed the PIT maneuver. (*Id.* at 3.) Viewed collectively, these claims and allegations are liberally construed as asserting a claim for excessive force against Deputy Sainsberry.

[89] (*Id.* at 3.)

[90] *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

immediate threat or evaded arrest—which implicates the substance of his pending state charges—*Younger* abstention is appropriate.[91] Accordingly, the Maddens' excessive force claim should be stayed until the conclusion of the state proceedings.

5. *Where the Maddens fail to meet minimal pleading standards for their other claims and defendants, a stay is not required under* Younger*.*

As explained below, the Maddens fail to state a claim for municipal liability against Utah County and the sheriff's office, and they fail to satisfy Rule 8 with respect to the remaining claims and defendants. Where these claims do not meet basic pleading standards, it is not apparent the *Younger* doctrine applies to them, and a stay is not needed.

6. *Conclusion of* Younger *Analysis*

In sum, the Maddens' claims seeking declaratory and injunctive relief relating to the state criminal proceedings against Mr. Madden must be dismissed under the *Younger* doctrine. The Maddens' excessive force claim against Deputy Sainsberry relating to execution of the PIT maneuver must be stayed, where the elements of that claim are intertwined with the pending criminal charges against Mr. Madden. But the remaining claims should be dismissed on other grounds set forth below.

---

[91] *See Wright v. Henry*, No. 20-3079, 2020 U.S. Dist. LEXIS 180211, at *8 (D. Kan. Sept. 30, 2020) (unpublished) (staying a claim under *Younger* where the plaintiff was "charged with fleeing or attempting to elude a police officer, and resisting or attempting to evade arrest is one of the factors to be considered in an excessive force claim"); *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1074 (N.D. Ill. 2014) ("Because the question whether [the plaintiff] is guilty of resisting arrest is intertwined with the question whether [the officer] used excessive force, *Younger* abstention is appropriate.").

B. Judicial Immunity

The Maddens' damages claims against Judge Koch, Judge Powell, Judge Griffin, and Judge Petersen are barred by absolute judicial immunity.[92] "[G]enerally, a judge is immune from a suit for money damages,"[93] including those brought under § 1983.[94] "This immunity 'protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.'"[95] The "immunity is not overcome by allegations of bad faith or malice, and it applies even when the judge is accused of acting maliciously and corruptly."[96] "The only exceptions to judicial immunity are for 'actions not taken in the judge's judicial capacity' and 'for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'"[97]

---

[92] The Maddens do not say whether they assert individual or official capacity claims under § 1983. Presumably, they bring individual capacity claims against the Judicial Defendants, because the Eleventh Amendment bars § 1983 claims for monetary relief against state officers in their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) ("The Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past.").

[93] *Mireles v. Waco*, 502 U.S. 9, 9 (1991).

[94] *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

[95] *Bradley v. Gray*, 78 F. App'x 84, 85 (10th Cir. 2003) (unpublished) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)).

[96] *Sherratt v. Braithwaite*, No. 24-4101, 2026 U.S. App. LEXIS 11580, at *8 (10th Cir. Apr. 23, 2026) (unpublished) (internal quotation marks and citations omitted).

[97] *Id.* (quoting *Mireles*, 502 U.S. at 11–12); *see also Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006) ("Only accusations that a judge was not acting in h[er] judicial capacity or that [s]he acted in the complete absence of all jurisdiction can overcome absolute immunity.").

Neither exception applies here. The Maddens base their claims against the Judicial Defendants solely on actions taken in each judge's judicial capacity. The complaint does not allege any specific act by Judge Griffin, Judge Petersen, or Judge Powell. But state court records indicate the first criminal case was initially assigned to Judge Griffin,[98] then to Judge Petersen, who issued the warrant for Mr. Madden's arrest in October 2024.[99] Judge Powell transferred the case to Utah's Third Judicial District, where Judge Koch was assigned.[100] According to the Maddens, Judge Koch has "refused to state her oath of office on the record," and "has attempted to proceed under a secret jurisdiction not disclosed on the record."[101] And the Maddens generally allege the defendants "imposed forced representation through [Mr.] Shimada," attempted to declare Mr. Madden incompetent, "confined him to a mental hospital to coerce compliance," and then declared him competent.[102] These actions—issuing warrants, transferring cases, deciding what to state on the record, appointing counsel, and determining a defendant's competence and confinement—are all judicial acts.

---

[98] *See Utah v. Madden*, No. 231404444 (Utah 4th Dist. Ct. Nov. 20, 2023).

[99] *See Utah v. Madden*, No. 231404444 (Utah 4th Dist. Ct. Oct. 1, 2024); (*see also* Mot. to Amend, Doc. No. 54 at 4 (alleging Judge Petersen was involved in issuing the warrant)).

[100] (*See* Compl., Doc. No. 1 at 4 (alleging the criminal "case was transferred to another country without lawful basis").) The Maddens do not say who transferred the criminal proceeding, but state court records indicate it was Judge Powell. *See Utah v. Madden*, No. 251901301 (Utah 3d Dist. Ct. Jan. 29, 2025).

[101] (Compl., Doc. No. 1 at 4.)

[102] (*Id.*)

Despite the Maddens' claims to the contrary, no facts suggest these actions were taken in the absence of jurisdiction. Throughout the complaint, the Maddens generally allege a lack of "lawful jurisdiction" for the criminal proceedings against Mr. Madden.[103] Their theory seems to be that no government official has jurisdiction because Mr. Madden is a sovereign citizen.[104] But such theories are "plainly frivolous."[105] Accordingly, judicial immunity bars the Maddens' claims for damages against the Judicial Defendants, and they should be dismissed with prejudice.[106]

C. Claims Against Mr. Shimada

Mr. Shimada seeks dismissal for insufficient service of process and failure to state a claim. The record confirms service was deficient. But it would be futile to give

---

[103] (*Id.* at 1–2, 4, 6; *see also id.* at 7–8 (alleging Judge Koch "acted outside lawful jurisdiction" and allowed the "proceedings absent lawful jurisdiction").)

[104] (*See* Ex. A to Compl., Dec. 2024 Notice filed in Case Nos. 231101509 & 231404444, Doc. No. 1-9 at 3–4, 6, 10, 12 (notifying the state court that Mr. Madden does not "consent to any further proceedings" and "refuse[s] to subscribe to any public officials or legal authorities" because "American people are in[ ]f[a]ct sovereign" and the court lacks jurisdiction over him as "a private living man with blood flowing through his body").)

[105] *United States v. Palmer*, 699 F. App'x 836, 838 (10th Cir. 2017) (unpublished); *see also Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (unpublished) (noting that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts has no conceivable validity in American law" (internal quotation marks omitted)); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' . . . or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.").

[106] Dismissal based on judicial immunity should be with prejudice. *See Smith v. Glanz*, 662 F. App'x 595, 596 (10th Cir. 2016) (unpublished) (affirming dismissal with prejudice based on judicial immunity); *Mehdipour v. Matthews*, 386 F. App'x 775, 778–79 (10th Cir. 2010) (unpublished) (same).

the Maddens an opportunity to re-serve Mr. Shimada because their complaint also fails to state a claim against him.

*1. Insufficient Service*

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for insufficient service of process. When a defendant does so, the plaintiff has the burden "of establishing the validity of the service of process."[107] Before personal jurisdiction may be exercised over a defendant, the plaintiff must have served process validly under Rule 4.[108]

Under Rule 4(e), an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," "delivering a copy of each to an agent authorized by appointment or by law to receive service of process," or following state law where the district court is located.[109] Utah law provides for the same methods of service, in addition to service by mail if the defendant signs a document indicating receipt.[110]

---

[107] *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

[108] *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Vasquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1163 (10th Cir. 2026) ("A district court does not have personal jurisdiction over defendants who neither have been served nor have waived service.").

[109] Fed. R. Civ. P. 4(e)(1)–(2).

[110] *See* Utah R. Civ. P. 4(d)(1)(A), (d)(2)(A).

Here, the Maddens filed a proof-of-service form indicating process was served on "Anna Chu."[111] While the form includes boilerplate language stating the person served was "designated by law to accept service of process" for Mr. Shimada, the record contains no information supporting this assertion. There is no evidence Anna Chu is an "agent authorized by appointment or by law" to receive service for Mr. Shimada.[112] Even after Mr. Shimada raised this issue in his motion, the Maddens did not respond to it or provide evidence of proper service. Accordingly, the Maddens have not shown they properly served Mr. Shimada under Rule 4.

"[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant."[113] But this option is unavailable when service would be futile.[114] Here, allowing the Maddens to properly serve the complaint on Mr. Shimada would be futile because the complaint fails to state a claim against him.[115]

---

[111] (Proof of Service, Doc. No. 32.)

[112] Fed. R. Civ. P. 4(e)(2)(C).

[113] *Gregory v. United States/U.S. Bankr. Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991) (citation omitted).

[114] *See id.*

[115] *See id.*; *Hulett v. Foster*, No. 24-cv-02387, 2025 U.S. Dist. LEXIS 233050, at *11 (D. Kan. Nov. 26, 2025) (unpublished) (concluding that permitting re-service would be futile because the complaint failed to state a claim); *accord Ngiendo v. Soc. Sec. Admin.*, 547 F. App'x 913, 914 (10th Cir. 2013) (affirming dismissal on both Rule 12(b)(5) and Rule 12(b)(6) grounds).

*2. Failure to State a Claim*

The Maddens do not state a plausible § 1983 claim against Mr. Shimada because they have not alleged facts showing he is a state actor. To state a claim under § 1983, a plaintiff must allege "(1) deprivation of a federal right by (2) a person acting under color of state law."[116] But "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."[117] And although a public defender may act "under color of state law when engaged in a conspiracy with state officials to deprive his client of constitutional rights,"[118] conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.[119] The plaintiff must "specifically present facts tending to show agreement and concerted action."[120] And the "standard is even stricter where the state officials allegedly involved in the conspiracy are immune from suit"—such as state court judges.[121]

The Maddens allege no facts showing an agreement or meeting of the minds between Mr. Shimada and any state official. They merely contend he was Mr. Madden's court-appointed attorney, the defendants (presumably the Judicial

---

[116] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

[117] *Polk County v. Dodson,* 454 U.S. 312, 318, 325 (1981).

[118] *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (internal quotation marks omitted).

[119] *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir. 1989).

[120] *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1983).

[121] *Id.* (citing *Shaffer v. Cook,* 634 F.2d 1259, 1260 (10th Cir.1980) (per curiam)).

Defendants) "imposed forced representation through [Mr.] Shimada," and, when Mr. Madden refused, the defendants tried to have him declared incompetent and to confine him to a mental hospital.[122] These facts do not suggest Mr. Shimada conspired to deprive the Maddens of any constitutional right. Nor do they suggest he took concerted actions aimed at such deprivation.[123] Accordingly, the Maddens do not plausibly allege Mr. Shimada acted under color of state law, and he cannot be held personally liable under § 1983.

In sum, the claims against Mr. Shimada should be dismissed without prejudice because the Maddens did not properly serve him—and allowing re-service would be futile where the complaint does not state a claim against him.[124]

---

[122] (Compl., Doc. No. 1 at 2, 4.) The Maddens' motion to amend includes these same allegations and adds a few conclusory claims relating to Mr. Shimada. (Mot. to Am., Doc. No. 54 at 10, 12; *see also id.* at 3 ("Jeremy Shimada – Fraud, Forced and False Representation, Violation Oath of Office, Official/Unofficial Misconduct, Falsification of Documentation, False Imprisonment, Illegal transfer to Utah State Hospital.").)

[123] *Cf., e.g.*, *Shaffer*, 634 F.2d at 1260 (holding the plaintiff failed to state a conspiracy-based civil rights claim against an attorney where the only allegation supporting the conspiracy theory was that the plaintiff saw the attorney speak with the judge in the courthouse before each hearing).

[124] *See Guebara v. Bascue*, No. 24-3072, 2025 U.S. App. LEXIS 11071, at *19 (10th Cir. May 8, 2025) (unpublished) (holding a district court lacked personal jurisdiction over a defendant who was not properly served and could not enter a judgment on the merits as to that defendant); *Towers v. Abbott*, No. 24-4024, 2026 U.S. Dist. LEXIS 88591, at *10 (D. Kan. Apr. 22, 2026) (unpublished) (finding dismissal without prejudice appropriate where service was insufficient and "additional time for service would be futile because Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted").

D. Municipal Liability

The Maddens also fail to state a viable municipal liability claim against Utah County or the Utah County Sheriff's Office under § 1983.[125] A local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[126] "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[127] To state a claim against a municipal entity, "a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference."[128]

The Maddens generally claim the defendants acted "through ratification, policy, custom, or deliberate indifference."[129] And they seek punitive damages "for policies,

---

[125] The sheriff's office is not a separate legal entity subject to suit. *See Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (unpublished) ("Generally, governmental sub-units are not separate suable entities that may be sued under § 1983."); *Lindsey v. Thomson*, 275 F. App'x 744, 747 (10th Cir. 2007) (unpublished) (acknowledging sheriff and police departments "are not legally suable entities."). But sometimes, courts construe pro se complaints against a governmental subdivision as asserting a claim against the main governmental entity. *See, e.g.*, *Faircloth v. Wilcox*, No. 2:24-cv-00807, 2024 U.S. Dist. LEXIS 213388, at *1 n.2 (D. Utah Nov. 21, 2024) (unpublished) (construing claims against the Salt Lake County Sheriff's Office as claims against the county); *Tyler v. Utah*, No. 2:07-cv-00004, 2008 U.S. Dist. LEXIS 103769, at *8 (D. Utah Dec. 23, 2008) (unpublished) (same). The court applies this liberal construction to the Maddens' claims against the Utah County Sheriff's Office.

[126] *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

[127] *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[128] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

[129] (Compl., Doc. No. 1 at 8.)

customs, practices, ratification, and deliberate indifference."[130] But the Maddens identify no specific policy or custom of Utah County or the Utah County Sheriff's Office. Nor do they allege facts showing any policy or custom caused the constitutional violations asserted in this case. Because the Maddens base their municipal liability claims purely on conclusory allegations, they fail to state a plausible claim against Utah County or the Utah County Sheriff's Office under § 1983.[131] Accordingly, their claims against these defendants should be dismissed without prejudice.

E. Frivolous Claims Under Criminal Statutes

The Maddens' claims asserted under 18 U.S.C. §§ 241 and 242 are legally frivolous. In Claim 9, they contend the defendants violated § 242 by forcing Mr. Madden to be represented by Mr. Shimada, and then trying to have him declared incompetent after he refused.[132] In Claim 14, they generally assert a "[d]eprivation of rights under color of law and conspiracy to do so, in violation of 18 U.S.C. §§ 241 and 242."[133] These statutes criminalize deprivations of federal constitutional or statutory rights—or conspiracies to interfere with them.[134] But they do not provide private civil causes of

---

[130] (*Id.* at 7.)

[131] *See Lucas*, 58 F.4th at 1145 (finding dismissal of municipal liability claims appropriate where no facts supported the claim of a policy or custom and no allegations supported a plausible inference that a policy caused the plaintiff's injury).

[132] (Compl., Doc. No. 1 at 3.)

[133] (*Id.*)

[134] *See* 18 U.S.C. § 241 (criminalizing conspiracies to interfere with rights); 18 U.S.C. § 242 (criminalizing deprivation of rights under color of law).

action.[135] Accordingly, the Maddens' claims under these criminal statutes are legally frivolous and must be dismissed.

F. Rule 8 (Remaining Claims and Defendants)

The Maddens' remaining claims do not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. Under this rule, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[136] "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."[137] At minimum, the plaintiff must "explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."[138]

The Maddens' remaining claims do not meet this standard. Aside from their excessive force claim based on the PIT maneuver (addressed above), the Maddens assert numerous other claims relating to the January 2025 arrest, including: seizure of Mr. Madden "without lawful jurisdiction," a verified complaint, or a "lawfully served warrant" (part of claim 2); failure to read Mr. Madden his rights during and after his arrest (claim 4); denial of "prompt and adequate medical care" (claim 5); prolonged

---

[135] *Tucker v. U.S. Ct. of Appeals for Tenth Cir.*, 815 F. App'x 292, 294 (10th Cir. 2020) (unpublished) (holding the plaintiff failed to state a claim under 18 U.S.C. §§ 241 and 242 because these "criminal statutes . . . do not provide for private civil causes of action"); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

[136] Fed. R. Civ. P. 8(a)(2).

[137] *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

[138] *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

detention of Ms. Madden (claim 6); excessive force by "Utah County Sheriff's Office deputies" by "keeping firearms drawn" (claim 7); "false statements to the public and media" (claim 12); and seizing and withholding private property (claim 13).[139] But the Maddens do not explain which defendants these claims are asserted against or how each defendant was involved.

With respect to the deputies, the Maddens name Deputy Cook, Deputy Olson, and Deputy Sainsberry in the caption and identify them as "government actors involved."[140] But the complaint contains no other allegations specifically relating to Deputy Cook and Deputy Olson. And it does not allege any conduct by Deputy Sainsberry apart from executing the PIT maneuver. Where the Maddens do not identify how each defendant engaged in the alleged violations, their remaining claims relating to the January 2025 arrest must be dismissed for failure to comply with Rule 8.

Likewise, the Maddens do not link the named prosecutors, Mr. VanDeGraaff and Ms. Thomas, to any violation of their rights. Mr. VanDeGraaff is named in the caption and in the list of "government actors involved,"[141] but the complaint contains no factual allegations relating to him. As for Ms. Thomas, the Maddens add that she participated in the criminal proceedings and "acted outside lawful authority, with actual or constructive knowledge of jurisdictional defects."[142] But these conclusory statements do

---

[139] (Compl., Doc. No. 1 at 2–3.)

[140] (*Id.* at 1–2.)

[141] (*Id.*)

[142] (*Id.* at 8.)

not explain how Ms. Thomas participated in depriving the Maddens of any federal rights.[143]

In sum, the complaint lacks any factual allegations relating to Deputy Cook, Deputy Olson, and Mr. VanDeGraaff, and it contains only conclusory allegations against Ms. Thomas. Accordingly, all these defendants must be dismissed. And apart from the excessive force claim against Deputy Sainsberry based in the PIT maneuver, all other claims relating to the January 2025 arrest must be dismissed under Rule 8, where the Maddens fail to allege how any named defendant was involved. Nevertheless, dismissal of these claims and defendants should be without prejudice, where it is not plain, at this stage, that amendment would be futile.[144]

### II. Motion for Immediate Release

The Maddens' motion for immediate release of Mr. Madden from custody,[145] construed as a motion for preliminary injunction, should be denied. Where the claims underlying the request for injunctive relief must be dismissed under the *Younger* doctrine, the Maddens are not entitled to preliminary relief. In their motion, the

---

[143] *See Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) ("A complaint that contains only conclusory allegations of a deprivation of a constitutional right and thus fails to supply a sufficient factual basis to allow defendants to intelligently prepare a defense fails to state a cause of action and must be dismissed."), *aff'd,* 961 F.2d 219 (10th Cir. 1992). To the extent the Maddens base their claims against Ms. Thomas on a "sovereign citizen" jurisdictional theory, such claims must be rejected as frivolous, as explained above.

[144] *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (noting dismissal should be without prejudice if it is "at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief" (citation omitted)).

[145] (Mot. for Immediate Release, Doc. No. 37.)

Maddens also ask the court to vacate a prior order extending the defendants' answer deadline, but they have shown no basis to reconsider that order.[146]

**III. Motion to Amend**

The Maddens' motion to amend their complaint[147] should be denied without prejudice. As explained below, their proposed amended pleading does not remedy the deficiencies identified in this report. But the Maddens should be allowed to file a new motion to amend to replead their claims against the Utah County Defendants specifically.

Rule 15 of the Federal Rules of Civil Procedure provides that unless an amendment is allowed as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[148] Rule 15 instructs courts to "freely give leave when justice so requires."[149] "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party,

---

[146] *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (noting grounds for reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice").

[147] (Doc. No. 54.)

[148] Fed. R. Civ. P. 15(a)(2). Rule 15(a)(1)(B) permits a party to amend its pleading once as a matter of course within twenty-one days of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). But the Maddens moved for leave to amend their complaint on April 20, 2026, thirty-five days after the Utah Country Defendants filed their motion to dismiss, sixty days after Mr. Shimada filed his motion, and sixty-one days after the Judicial Defendants' motion. (Mot. for Leave to Am., Doc. No. 54.) Because the Maddens have not shown the defendants consented to the amendment, leave to amend is required.

[149] Fed. R. Civ. P. 15(a)(2).

bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[150]

In their proposed amended complaint,[151] the Maddens name the same defendants and assert the same claims and allegations as in the original complaint—indeed, they copy their entire original complaint.[152] The few additional details they provide are difficult to follow and do not remedy the deficiencies identified above. In sum, *Younger* still bars the Maddens' claims for injunctive and declaratory relief, and no cause of action exists for claims under 18 U.S.C. §§ 241 and 242. The Maddens allege no actions by the Judicial Defendants falling outside the scope of judicial immunity. The proposed pleading does not remedy the Maddens' insufficient service on Mr. Shimada, nor does it contain allegations showing he acted under color of state law. There are no allegations supporting municipal liability against Utah County or the Utah County Sheriff's Office. And the allegations as to Mr. VanDeGraaff, Deputy Cook, Deputy Olson, and Ms. Thomas remain conclusory.

Where the Maddens' proposed amended complaint does not remedy the deficiencies described above, the amendment would be futile. Accordingly, the motion to amend should be denied. But because it is not clear that *any* amendment would be

---

[150] *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (internal quotation marks omitted).

[151] The Maddens did not attach a proposed amended complaint to their motion. Instead, their proposed amendment appears to be encompassed within the motion itself. (*See* Mot. for Leave to Am., Doc. No. 54.) As noted, the Maddens copy the entire original complaint into this motion, (*id.* at 10–20), after several pages of largely unintelligible material, (*id.* at 1–9). Given the confusion this creates, the court construes the entire body of the motion as the proposed amended pleading.

[152] (*Id.* at 10–20.)

futile as to the Utah County Defendants, this denial should be without prejudice to filing a new motion to amend the claims against the Utah County Defendants.

**RECOMMENDATION**

The undersigned recommends the district judge:

1) grant the Judicial Defendants' motion to dismiss;[153]
2) grant Mr. Shimada's motion to dismiss;[154]
3) grant in part and deny in part the Utah County Defendants' motion to dismiss;[155]
4) dismiss the claims for declaratory and injunctive relief without prejudice under the *Younger* doctrine;
5) dismiss the individual-capacity damages claims against the Judicial Defendants with prejudice based on judicial immunity;
6) stay the excessive force claim against Deputy Sainsberry pending the resolution of the state criminal proceedings, per the *Younger* doctrine;
7) dismiss the claims against Mr. Shimada without prejudice for insufficient service, where re-service would be futile;
8) dismiss the claims against Utah County and the Utah County Sheriff's Office for failure to state a claim;

---

[153] (Doc. No. 38.)

[154] (Doc. No. 39.)

[155] (Doc. No. 46.)

9) dismiss the claims against Ms. Thomas, Mr. VanDeGraaff, Deputy Cook, Deputy Olsen, and the remaining claims against Deputy Sainsberry (other than the excessive force claim) for failure to comply with Rule 8;

10) deny the Maddens' motion for preliminary injunctive relief;[156] and

11) deny the Maddens' motion to amend without prejudice.[157]

The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[158]

DATED this 13th day of August, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

[156] (Doc. No. 37.)

[157] (Doc. No. 54.)

[158] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).